**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**


JACK GALARDI, *et al.*,                    :
                                           :
        Plaintiffs,                        :
                                           :
v.                                         :    CIVIL ACTION NO.
                                           :    1:09-CV-965-RWS
CITY OF FOREST PARK, *et al.*,             :
        Defendants.                        :
                                           :
                                           :
                                           :

## ORDER

     This case comes before the Court on Plaintiffs' Motion for Temporary

Restraining Order [73], Defendants' Notice of Objection to Plaintiffs' Exhibits

[76], Plaintiffs' Notice of Objection to Defendants' Exhibits [116], and

Defendants' Motion for Leave to File Exhibits Out of Time [119]. After a

review of the record, the Court enters the following Order.

**I. Factual Background**

     The Plaintiffs own and operate two adult entertainment businesses, the

Crazy Horse Saloon and the Pink Pony South, which are located within the City

of Forest Park. Am. Cmpl., Dkt. No. [69] at 3-4. On March 23, 2009, the City

of Forest Park passed an adult entertainment ordinance ("2009 Ordinance") which the Plaintiffs subsequently challenged**,** initiating this action. Cmpl., Dkt. [1].  The parties eventually agreed to a joint stipulation which barred Forest Park from enforcing various provisions of the 2009 Ordinance. Stip., Dkt. No. [8].

However, on March 9, 2010, the City passed a new adult entertainment ordinance ("2010 Ordinance"). 2010 Ord., Dkt. No. [71-6] at 1.  All but one of this ordinance's provisions took place immediately–the alcohol provision.  This provision, Sec. 9-12-7(e), stated that after January 1, 2011 it would be unlawful to "sell, trade, exchange, dispense, give away, consume, or allow the consumption of, any alcoholic beverage of any kind . . .in or upon the premises of any adult entertainment establishment . . ." Id. at 22. As a result, Plaintiffs filed an Amended Complaint challenging the 2010 Ordinance and subsequently filed this motion for Preliminary Injunction, seeking to enjoin Forest Park from enforcing the 2010 Ordinance.  See Dkt. Nos. [69, 73].  In response, the Defendants then filed a Notice of Objection challenging six of the Plaintiffs' Exhibits pursuant to their attorney-client and work-product privileges. Dkt. No. [76].

2

The Court ordered a hearing on the matter. Dkt. No. [74].  As a result of the hearing, and in order to follow the City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002) burden-shifting scheme, the Court directed the Defendants to submit their 2010 Ordinance findings. Dkt. No. [86].  Upon reviewing the documents, the Court determined that the City had established its *prima facie* burden and directed the Plaintiffs to file any evidence to "cast doubt" on the Defendants' rationale. Dkt. No. [89].  As a result of that evidence, the Court then directed the City to respond, if they so chose, with any rebuttal evidence. Dkt. No. [97].

The Defendants, after receiving a filing extension of December 24, 2010, did not file their response until December 27, 2010. The Plaintiffs filed a Notice of Objection citing timeliness and relevance. Dkt. No. [116]. The Court will consider each of the motions in turn.

## II. Discussion

### A. Defendants' Notice of Objection

Defendants have challenged Plaintiffs' Exhibits 5, 6, 7, and 10 as attorney-client privileged and work product.  And, they have challenged Exhibits 8 and 9 as work product produced in anticipation of litigation. In

3

response, Plaintiffs argue that the documents are not privileged due to waiver or the crime-fraud exception, and that the non-attorney documents were not produced in anticipation of litigation.

"The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." In re Grand Jury Proceedings 88-9, 899 F. 2d 1039, 1042 (11th Cir. 1990) (quoting United States v. McConney, 728 F. 2d 1195, 1202 (9th Cir. 1984) (en banc)). This privilege is "one of the oldest recognized privileges for confidential communications." Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998). Recognition of attorney-client privilege is intended to encourage frank communication with an attorney. Id. The party claiming the privilege bears the burden of proving the existence of the privilege. See, e.g., In re Grand Jury Investigation (Schroeder), 842 F. 2d 1223, 1225 (11th Cir. 1987). Further, the party claiming the privilege must establish the following elements: (1) the holder of privilege is a client; (2) the person to whom communication was made is a member of the bar and that person is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which the attorney was informed by the client without the presence of strangers for the

4

purpose of securing legal advice; and (4) the privilege is claimed and not waived by the client.  In re Grand Jury Proceedings 88-9, 899 F. 2d at 1042.

Here, the Court finds that Exhibits 5, 6, 7, and 10 are protected by the attorney-client privilege and that such privilege is not subject to an exception. All of this correspondence involved City Attorney Joe Harris and either attorney communications between himself and City employees or between himself and another attorney, seeking legal advice on the City's behalf. Moreover, these communications were either confidential e-mails or letters–there is no evidence that these communications involved a non-employee, third party.[1]

Additionally, there has been no waiver of the privilege. Plaintiffs unpersuasively argue that the privilege must have been waived because they gained access to the materials–without ever revealing how they did so. However, Defendants maintain that they did not affirmatively waive the privilege as the City Counsel did not authorize such disclosure and did not inadvertently waive it as they never provided the Plaintiffs these documents through production or otherwise. Moreover, while they are still investigating,

---

[1]The "Steve" and "Cindy" referred to in Exhibits 5 and 7 are City employees.

5

the Defendants suspect that the Plaintiffs obtained these communications from a "renegade" employee who did not have authority to produce the documents.

This Court finds the Sixth Circuit's reasoning in Ross v. City of Memphis, 423 F.3d 596, 605 (6th Cir. 2005) persuasive in this case. There, the court ruled that the City retains its privilege to its attorney-client communications even when its co-defendant employee's litigation strategy would require that the privilege be relinquished. Id. The Sixth Circuit found that the City is the one who chooses when its privilege is waived, even when another's interest may be prejudiced. Id.

Here, the City itself has not waived its privilege–either expressly or through inadvertent disclosure–therefore, no waiver has occurred. The Defendants have completed due diligence in attempting to locate the source of the "leak" and are continuing to pursue this path. Moreover, Plaintiffs cannot hide behind the "it must be available because we obtained it" argument without minimally explaining how the documents were procured. Therefore, Defendants have not waived their privilege.

Additionally, the Plaintiffs claim that this evidence should be admitted due to the crime-fraud exception to the attorney-client privilege. Plaintiffs

6

argue that the Defendants used their attorney's advice to "limit the findings,

manipulate the outcomes, [and] suppress the fact that there were no secondary

effects" of adult entertainment establishments in Forest Park by not taking a

local study in Forest Park. Pl.'s Resp. to Obj., Dkt. No. [96] at 9.  In

determining whether this exception applies, the Court is to apply a two-pronged

test in the Eleventh Circuit. In re Grand Jury (G.J. No. 87-03-A), 845 F.2d 896,

897 (11th Cir. 1988).

> First, there must be a prima facie showing that the client was
> engaged in criminal or fraudulent conduct when he sought the
> advice of counsel, that he was planning such conduct when he
> sought the advice of counsel, or that he committed a crime or fraud
> subsequent to receiving the benefit of counsel's advice. Second,
> there must be a showing that the attorney's assistance was obtained
> in furtherance of the criminal or fraudulent activity or was closely
> related to it.

Id.

Here, Plaintiffs cannot demonstrate the first  prong.  First, Plaintiffs have

not established a crime which the Defendants committed and their claim for

fraud is stretched.  Namely, they argue that by avoiding taking a local study, the

Defendants committed a fraud.  However,  Mr. Harris' actions in

recommending that the City not complete a study is consistent with federal case

7

AO 72A
(Rev.8/82)

law which clearly advises that cities do not have to complete their own studies

so long as they have other evidence which is reasonably believed to be relevant

to the problem the city seeks to address. <u>See</u> <u>Flanigan's Enters., Inc. of Ga. v.</u>

<u>Fulton Cnty., Ga.</u>, 596 F.3d 1265, 1278 (11th Cir. 2010) ("<u>Flanigan's</u>

<u>II</u>")(quoting <u>Daytona Grand, Inc. v. City of Daytona Beach, Fla.</u>, 490 F.3d 860,

875 (11th Cir. 2007)).  Moreover, the City's attorney may assure that if the City

chose to complete a study, it would be done properly and according to the

attorney's specifications. Advocating and advising on the law does not amount

to a *prima facie* showing of fraud. Therefore, Defendants retain their privilege

and their objection is **SUSTAINED** as applied to Exhibits 5, 6, 7, and 10.

Defendants also claim Exhibits 8 and 9 are protected by the work product

doctrine.  As an initial matter, the Court rejects Plaintiffs' waiver and crime-

fraud exception arguments for the same reasons as stated above.  However,

Defendants must first establish that these documents are protected as work

product.  The work product doctrine  protects from disclosure documents and

tangible things "prepared in anticipation of litigation or for trial by or for

another party" or that party's representative, including the party's attorney. FED.

R. CIV. P. 26(b)(3). The party objecting to discovery bears the burden of

establishing that the information sought is protected. <u>Lott v. Seaboard Sys.</u>
<u>R.R., Inc.</u>, 109 F.R.D. 554, 557 (S.D. Ga. 1985).

Exhibit 8 involves a December 8, 2008 correspondence between Steve
Pearson, the City's Director of Planning, Building, and Zoning, and John
Parker, the City Manager.  This communication is a summary of the legislative
actions and consent orders that have occurred in reference to the Pink Pony
South.  This document is not in "anticipation of litigation" but rather is a
summary of past litigation.  The substance of this correspondence is within the
public realm and does not involve litigation strategies or mental impressions
which the privilege seeks to protect.  In fact, the only opinion in the document
involves Mr. Pearson stating that the City could have been "more proficient"
and "less stealthy" or "lame," in that the City already had provisions in place
which prevented the same behavior. Nothing in this document addresses future
or ongoing litigation with the Pink Pony South.  Dkt. No. [73-25] at 2-3.
Moreover, the document is relevant.  Therefore, Defendants' objection to
Exhibit 8 is **OVERRULED.**

Exhibit 9 is a March 26, 2009 memo between the same parties as
Exhibit 8.  This memo outlines why Mr. Pearson feels there are no secondary

AO 72A
(Rev.8/82)

effects of adult entertainment establishments in Forest Park.  However, unlike

Exhibit 8, this document was clearly made in anticipation of litigation.  Mr.

Pearson hypothesizes what actions the "Galardi group" will take in response to

the City's stance on secondary effects.  Moreover, Mr. Pearson goes on to

suggest what his answers would be in a deposition on this issue.  This clearly is

in anticipation of litigation.  Therefore, Defendants' objection to Exhibit 9 is

**SUSTAINED.**

     B. Plaintiffs' Notice of Objection

     Plaintiffs have objected to all of Defendants' Exhibits filed in response to

Plaintiffs' "casting doubt" evidence as untimely and and many as irrelevant,

post-enactment evidence.  First, Plaintiffs argue that this evidence was untimely

because although the parties agreed to a consent order which extended the

Defendants' filing deadline until December 24, 2010, the Defendants did not

make their filing until December 27, 2010.  When a filing deadline is missed,

"the court may, for good cause, extend the time . . .on a motion made after the

time has expires if the party failed to act because of excusable neglect." FED. R.

CIV. PRO. 6(b)(1)(B).

AO 72A
(Rev.8/82)

Defendants move for leave to admit these exhibits because they had difficulties with the Court's filing system on December 24, 2010, a federal holiday.  Because of the number and size of the exhibits, Defendants needed "administrative assistance" to file the documents and Chambers was not open for such assistance.  Defendants filed their exhibits on Monday December 27, 2010, the first day the Court was open following the holiday.  Moreover, the Defendants make clear that their submission was prepared by December 24, 2010 and the only hindrance in filing was the electronic filing system.  As such, this Court finds Defendants' neglect was excusable and deems the submissions as timely.  Defendants' Motion for Leave to File Exhibits [119] is **GRANTED**.

As a preliminary matter, because Plaintiffs have clarified that they only object to the timeliness of Exhibits B, C, E, F, and G, those objections are **OVERRULED**. See Dkt. No. [116] at 17; Dkt. No. [123] at 7, 10.  Plaintiffs next argue, though, that the remaining Exhibits are irrelevant because Defendants should only be allowed to rely upon evidence which was considered at the time of the City Counsel's vote. Whether post-enactment evidence can be considered was left open by the Supreme Court in City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 442 (2002) and has never been

11

affirmatively addressed in the Eleventh Circuit.[2]  But, because this Court finds

that Plaintiffs are unable to meet their high preliminary injunction burden

without even considering this evidence, the Court declines to decide whether

this evidence is admissible at this time.  Therefore, Court **SUSTAINS**

Plaintiffs' Objections as to Exhibits A, D, and H for consideration on the

pending motions..

### C. Preliminary Injunction

Plaintiffs have moved for a preliminary injunction to enjoin the City from

enforcing its adult entertainment ordinance, Forest Park Code, Title 9, Chapter

12 (Ordinance No. 10-07), as adopted March 9, 2010.  It is settled law in this

Circuit that a preliminary injunction is an "extraordinary and drastic remedy[.]"

---

[2]The Eleventh Circuit has ruled that municipalities are required to consider "some" pre-enactment evidence but has not stated affirmatively whether post-enactment evidence can additionally be considered.  See Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., Fla., 337 F.3d 1251, 1268, 1272-73 (11th Cir. 2003) (holding that the municipality must rely upon pre-enactment evidence to survive scrutiny and that following reversal of summary judgment for the county, the county was able to produce "additional evidence" on remand without specifying whether this evidence should be evidence which existed at the time of enactment or could be composed of classic, post-enactment evidence); Daytona Grand, 490 F.3d 860, 885 n.35 (11th Cir. 2007) (stating that the court did not need to reach the city's post-enactment evidence as the Plaintiffs did not "cast doubt" on the city's rationale).

AO 72A
(Rev.8/82)

<u>Zardui-Quintana v. Richard</u>, 768 F.2d 1213, 1216 (11th Cir. 1985). To obtain

such relief, a movant must demonstrate:

> (1) a substantial likelihood of success on the merits of the
> underlying case, (2) the movant will suffer irreparable harm in the
> absence of an injunction, (3) the harm suffered by the movant in
> the absence of an injunction would exceed the harm suffered by the
> opposing party if the injunction issued, and (4) an injunction would
> not disserve the public interest.

<u>Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.</u>, 299 F.3d 1242,

1246-47 (11th Cir. 2002).

Here, Plaintiffs cannot establish a substantial likelihood of success on the

merits.  Because the City's purpose in enacting the adult entertainment

ordinance is "combatting the harmful secondary effects of that conduct on the

surrounding community," the ordinance is treated as content-neutral for

scrutiny purposes. <u>Fly Fish, Inc. v. City of Cocoa Beach, Fla.</u>, 337 F.3d 1301,

1306 (11th Cir. 2003).  As such, under <u>Renton v. Playtime Theaters, Inc.</u>, 475

U.S. 41 (1986), the City's ordinance is entitled to intermediate scrutiny under

<u>United States v. O'Brien</u>, 391 U.S. 367 (1968) and will survive "so long as it is

AO 72A
(Rev.8/82)

designed to serve a substantial government interest and leaves open ample

alternative avenues of communication."[3]

> According to [the O'Brien] test, . . . ordinances that incidentally impact protected expression should be upheld if they (1) are within the constitutional power of the government to enact; (2) further a substantial governmental interest; (3) are unrelated to the suppression of free expression; and (4) restrict First Amendment freedoms no greater than necessary to further the government's interest.

Peek-A-Boo Lounge, 337 F.3d at 1264.

In establishing the second prong of the O'Brien test, the Eleventh Circuit

has enacted a burden shifting scheme whereby the City must first establish that

the "challenged ordinance furthers a substantial government interest." Daytona

Grand, 490 F.3d at 873.  In doing so, the City need not conduct its own studies

". . . so long as whatever evidence the city relies upon is *reasonably believed* to

be relevant to the problem that the city addresses." Flanigan's, 596 F.3d at 1278

(quoting Daytona Grand, 490 F.3d at 875) (emphasis added).

---

[3]The Supreme Court has ruled that requiring dancers to "don pasties and G-strings does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic." Barnes v. Glen Theater, Inc., 501 U.S. 560, 571 (1991).

"Once a city has provided evidence that it reasonably believed to be relevant to its rationale for enacting the ordinance, plaintiffs must be given the opportunity to 'cast direct doubt on this rationale,' either by demonstrating that the city's evidence does not support its rationale or by furnishing evidence that disputes the city's factual findings." Daytona Grand, 490 F.3d at 875-76 (quoting Peek-A-Boo Lounge, 337 F.3d at 1265). "If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance." Id. at 876 (quoting Alameda Books, Inc., 535 U.S. at 439.

After reviewing the evidence which the parties have submitted under the Alameda Books burden-shifting scheme, this Court finds that the Plaintiffs have not shown a "substantial likelihood of success on the merits." The evidence presented by the City in support of its decision to enact the ordinance includes testimony of three experts hired by the City who made presentations on negative secondary effects, affidavits from former employees of Plaintiffs documenting criminal and inappropriate conduct at the establishment, and numerous studies from other locations on the negative secondary effects.

15

The Eleventh Circuit has made very clear that in order to effectively "cast doubt" on the Defendants evidence, Plaintiffs must "cast direct doubt on <u>all</u> of the evidence that the City reasonably relied on when enacting that challenged ordinance. . ." <u>Daytona Grand</u>, 490 F.3d at 884 (emphasis added).  While the Plaintiffs have challenged many of the City's cited studies through expert opinion, they have left unchallenged twenty-one studies. <u>Compare</u> Ord. No. 10-07, Dkt. No. [71-6] at 1-2 <u>with</u> Aff. Daniel Linz, Dkt. No. [6], Ex. Q (challenging twelve of the thirty-three studies cited by the City).  Additionally, even assuming that three of the club employee affidavits are invalidated by their subsequent affidavits, three remain unchallenged.

Defendants have also explained why their Comprehensive Plan refers to Plaintiffs' section of Jonesboro Rd. as an "international commercial corridor." The drafter of the plan, Lee B. Walton, explains that due to this location's proximity to the job-creating international airport, a major highway interchange, and the completion of many near-by development plans that were occurring nearby, demand would increase for this area. Aff. Walton, Dkt. No. [114-1] at ¶ 5-7.  As a result, Walton predicts that the current buildings in this area, including the adult entertainment establishments, will be replaced by "national

16

retail tenants in a master planned commercial environment." <u>Id.</u> at ¶ 7.

Moreover, it is Walton's opinion that adult entertainment establishments are not

consistently found in close proximity to this type of growth. <u>Id.</u>

Most importantly, though, the Eleventh Circuit has made clear that this

Court's level of scrutiny "requires deference to the reasoned judgment of a

governmental entity: 'a city must have latitude to experiment, at least at the

outset, and . . . <u>very little evidence is required</u>.'" <u>Flanigan's II</u>, 596 F.3d at 1279

(<u>quoting</u> <u>Daytona Grand</u>, 490 F.3d at 880) (emphasis added).  The ultimate

inquiry is whether the City's rationale "was a reasonable one, and even if [the

plaintiff] demonstrates that another conclusion was also reasonable, we cannot

simply substitute our own judgment for the City's." <u>Id.</u> (<u>quoting</u> <u>Daytona

Grand</u>, 490 F.3d at 882). With this view in mind, the Plaintiffs have simply not

made a showing that there is a substantial likelihood of success that the City's

rationale was unreasonable.  As a result, Plaintiff's Motion for Preliminary

Injunction [73] is **DENIED**.

## III. Conclusion

Defendants' Motion for Leave to File Exhibits Out of Time [119] is

**GRANTED**.  Defendants' Notice of Objection to Plaintiffs' Exhibits [76] is

17

**SUSTAINED** as to Exhibits 5, 6, 7, 9 and 10 but **DENIED** as to Exhibit 8.

Plaintiffs' Notice of Objection to Defendants' Exhibits [116] is **OVERRULED**

as to Exhibits B, C, E, F, and G and, as to the remaining Exhibits, is

**SUSTAINED**. Lastly, Plaintiffs' Motion for Temporary Restraining Order [73]

is **DENIED**.

      **SO ORDERED** this _ 13th _ day of January, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

18