UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JACK GALARDI, et al.,                                :

      Plaintiffs,                             :

                             CIVIL ACTION NO.

v.                                                          :

                          1:09-CV-965-AT

CITY OF FOREST PARK, et al.,              :

      Defendants.                            :

## ORDER

This action is before the Court on defendants' supplemental motion to dismiss [135] and motions for reconsideration filed by plaintiffs [138] and defendant City of Forest Park [141].  For the following reasons, the Court denies defendants' supplemental motion to dismiss, denies plaintiffs' motion for reconsideration, and grants the City of Forest Park's motion for reconsideration.

Background

Plaintiffs are the owners and operators of the Crazy Horse Saloon and the Pink Pony South, commercial establishments located within the City of Forest Park, Georgia (the "City"), which serve alcohol and formerly featured live nude dancing.  Plaintiffs challenge the constitutionality of the City's adult entertainment

AO 72A
(Rev.8/82)

ordinance enacted in March 2010, which took effect in January 2011 (the "2010 Ordinance"). The City enacted the 2010 Ordinance to combat adverse secondary effects associated with sexually oriented businesses, including increased crime and diminished property values. 2010 Ordinance § 9-12-1. To address these secondary effects, the ordinance, among other things, prohibits both alcohol and nudity at adult entertainment establishments. *Id.* § 9-12-7(e) and (f).

On November 3, 2010, plaintiffs filed a motion for a temporary restraining order and preliminary injunction seeking to enjoin enforcement of the 2010 Ordinance. Plaintiffs argued that the ordinance could not survive intermediate scrutiny under the test established by the Supreme Court in *United States v. O'Brien*, 391 U.S. 367 (1968), because the evidence of adverse secondary effects on which the City relied in enacting the ordinance was "shoddy," and its investigation of such effects was a "sham." Mem. in Supp. of Pls.' Mot. for TRO and Prelim. Inj. at 19-20 (quoting *Flanigan's Enters., Inc. of Ga. v. Fulton Cnty., Ga.*, 596 F.3d 1265, 1283 (11th Cir. 2010) (*Flanigan's II*)) .

On January 13, 2011, the Court denied plaintiffs' motion. After reviewing the evidence submitted by the City in support of its secondary effects rationale and evidence submitted by plaintiffs seeking to cast doubt on that evidence, the Court

2

held that plaintiffs "have simply not made a showing that there is a substantial likelihood of success [on the merits of their claim] that the City's rationale was unreasonable." Order of Jan. 13, 2011, at 17. Plaintiffs appealed to the Eleventh Circuit, where the appeal remains pending.

Meanwhile, the City and the individual defendants[1] filed separate motions to dismiss plaintiffs' Amended Complaint,[2] and plaintiffs moved to file a Second Amended Complaint. On May 26, 2011, the Court entered an Order denying plaintiffs' motion to file a Second Amended Complaint, granting the individual defendants' motion to dismiss, and granting the City's motion to dismiss all but one of plaintiffs' claims. The only surviving claim is that the annual regulatory fee established by the 2010 Ordinance violates the First Amendment by granting the City unbridled discretion in setting the amount of the fee. Plaintiffs and the City both filed motions for reconsideration.

---

[1] In addition to the City itself, plaintiffs also sued Forest Park Mayor Corrine Deyton, City Manager John Parker, and Chief of Police Dwayne Hobbes, as well as members of the Forest Park City Council.

[2] The original Complaint challenged the constitutionality of the City's previous adult entertainment ordinance, which was enacted in 2009 ("2009 Ordinance"). After the City adopted the 2010 Ordinance, the Court granted plaintiffs leave to file the Amended Complaint challenging the new ordinance. Order of Oct. 7, 2010.

Just before entry of the May 26 Order, defendants filed a supplemental motion to dismiss arguing that plaintiffs no longer have standing to pursue any of their claims.  The Court directed the parties to file consolidated briefs addressing the issues raised by the supplemental motion to dismiss and the motions for reconsideration.  With that briefing now complete, the Court first addresses the threshold issue of plaintiffs' standing raised by defendants' supplemental motion to dismiss and then turns to the parties' respective motions for reconsideration.

Discussion

I.      Defendants' Supplemental Motion to Dismiss

On December 22, 2010, while defendants' original motions to dismiss were pending, the City denied applications filed by plaintiffs to renew their adult entertainment licenses for the calendar year 2011.  The stated reason for the denials was the failure of plaintiffs' establishments to comply with the prohibition on private rooms or booths set out in Section 9-12-14(a) of the 2010 Ordinance,[3] a provision that plaintiffs did not challenge in their Amended Complaint.  Following

---

[3] Section 9-12-14(a) provides in part:  "No adult entertainment establishment . . . shall provide any booth, room, cubicle or enclosed space for customers or patrons to go where entertainers or other employees are also permitted to go, excepting only restrooms, and no entertainment shall be conducted or viewed inside any booth, room, cubicle or enclosed space or restroom."

the denials, both establishments ceased providing adult entertainment and began operating as "bikini bars" where all employees were clothed. Plaintiffs appealed the denials to the Superior Court of Clayton County, where the appeals remain pending.

Defendants argue that since plaintiffs lost their adult entertainment licenses due to noncompliance with an unchallenged ordinance provision, they have suffered no actual or threatened injury as a result of the City's enforcement of the challenged provisions, and the only injury that they have suffered would not be redressed by a favorable decision in this case. Therefore, defendants contend, plaintiffs no longer have standing to pursue any of the claims asserted in their Amended Complaint.

In response, plaintiffs argue that while their motion to enjoin enforcement of the allegedly unconstitutional provisions of the ordinance was pending, they were forced to choose between implementing two unattractive alternative business options: (1) make the structural changes necessary to comply with the new ordinance and operate their businesses as adult entertainment establishments without alcohol service, thereby rendering their businesses unprofitable; or (2) convert the businesses to operate as "bikini bars," which would permit them to

5

continue serving alcohol and remain profitable until such time as this litigation is resolved.  In this context, plaintiffs understandably concluded that only option two was viable.  Plaintiffs state that if the alleged constitutional infirmities in the 2010 Ordinance are remedied as a result of this litigation, it is their intention to make whatever changes are necessary in their business operations, including the elimination of private rooms or booths, so they can reapply for adult entertainment licenses.  *See* Pls.' Consol. Resp. to Defs.' Supplemental Mot. to Dismiss and Defs.' Mot. for Recons. [148] at 4, 12; Aff. of Dennis E. Williams ¶¶ 7, 9 (City's Supplemental Mem. of Law in Supp. of Supplemental Mot. to Dismiss [142-2], Ex. A).  Thus, plaintiffs argue, they have suffered an actual injury as a result of enactment of the 2010 Ordinance because they cannot operate their businesses profitably under its allegedly unconstitutional restrictions, and a favorable outcome in this case would redress that injury by permitting them once again to operate the businesses profitably as adult entertainment establishments.[4]

The Court agrees with plaintiffs.  First, the Court notes that defendants' motion actually raises the issue of mootness rather than standing.  Both doctrines

---

[4] Plaintiffs also argue that they have suffered a redressable injury because the City has cited their employees for violations of the 2010 Ordinance.  The Court finds it unnecessary to address this contention.

AO 72A
(Rev.8/82)

are based on the Constitution's case-or-controversy limitation on federal judicial authority, U.S. Const. Art. III, § 2, cl. 1, but the two inquiries differ in critical respects. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000). Standing is determined by the facts that exist at the time the complaint is filed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992). Mootness, on the other hand, depends upon a change in circumstances that arises after the complaint is filed. *Friends of the Earth*, 528 U.S. at 191-92. Defendants' supplemental motion to dismiss is based upon such a change in circumstances, *i.e.*, the denial of plaintiffs' applications to renew their adult entertainment licenses for 2011 based upon an ordinance provision that is not challenged in their Amended Complaint. Therefore, their motion raises the issue of mootness.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)) (internal quotation marks omitted). In *Pap's A.M.*, the Supreme Court held that the owner's closure of an establishment featuring nude dancing did not render moot the city's appeal of a ruling striking down its public indecency ordinance proscribing nudity in public places, because "Pap's is still incorporated

under Pennsylvania law, and it could again decide to operate a nude dancing establishment in Erie." 529 U.S. at 287.

Similarly, in *Clark v. City of Lakewood*, 259 F.3d 996 (9th Cir. 2001), Clark, the owner of an adult business, challenged the constitutionality of a new adult cabaret ordinance. After filing suit, Clark claimed he was forced to close his business when it began losing money as a result of the restrictions imposed by the new ordinance. *Id.* at 1003. Noting that Clark's "stated intention is to return to business," the court concluded that he "still has a legally cognizable interest in the outcome of this lawsuit sufficient to allow him to seek injunctive relief." *Id.* at 1012. Even "[a]ssuming Clark would now have to apply for a new license and pay a fee as would any new adult cabaret owner, this added step is not an insurmountable barrier and thus not enough to moot Clark's case." *Id.* (citing *Pap's A.M.*, 529 U.S. at 287).

The reasoning in *Pap's A.M.* and *Clark* is also applicable in this case. After filing suit, plaintiffs claim that, as a result of the challenged restrictions in the 2010 Ordinance that were about to take effect, they were forced to cease operating their businesses as adult entertainment establishments and to convert them to "bikini bars" without adult entertainment. As with the owner in *Clark*, it is plaintiffs'

8

stated intention to return to business as adult entertainment establishments once the alleged constitutional infirmities in the new ordinance are remedied. Also as in *Clark*, the fact that this will require plaintiffs to reapply for adult entertainment licenses and to make whatever structural changes to their facilities are necessary to comply with the ordinance's unchallenged restrictions on private rooms or booths "is not an insurmountable barrier and thus not enough to moot [plaintiffs'] case."[5] 259 F.3d at 1012.

Defendants rely on a line of cases holding that sign company plaintiffs lacked standing to challenge provisions of sign ordinances because they had been denied permits on the basis of other, unchallenged provisions. *See, e.g., Maverick Media Grp., Inc. v. Hillsborough Cnty., Fla.*, 528 F.3d 817, 821 (11th Cir. 2008); *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 461-62 (6th

---

[5] It is not clear why plaintiffs chose to apply for a renewal of their adult entertainment licenses when their establishments clearly did not comply with the prohibition on private rooms or booths. Nor is it clear why plaintiffs are apparently still pursuing an appeal of the denial of those licenses for that very reason. Nevertheless, the Court does not find these facts relevant to the mootness issue. What matters is that, as a result of the restrictions imposed by the challenged provisions of the new ordinance, plaintiffs chose to cease providing adult entertainment and to operate instead as "bikini bars" until this lawsuit was resolved, with the intention of reapplying for adult entertainment licenses if and when the challenged provisions were struck down. It was certainly not unreasonable for plaintiffs not to make the required structural modifications to their facilities while this suit was still pending because, if the suit is unsuccessful, plaintiffs have no intention of operating the businesses as adult entertainment establishments and such modifications would therefore be unnecessary.

Cir. 2007).  In these cases, however, the courts recognized that the result might have been different if the sign companies had presented evidence that they intended to erect signs that complied with the unchallenged provisions.  *See Maverick*, 528 F.3d at 822 ("If there were any evidence in this record that Maverick sought to display signs that otherwise complied with the permitted sign provision, it might have an injury in fact as to the height and size restrictions in this provision"); *Midwest Media*, 503 F.3d at 462-63 ("We need not decide whether plaintiffs could resolve this standing defect by alleging that they wish to post signs that would satisfy the [unchallenged ordinance provisions]" because "they offer no basis for concluding that they will seek permission to post a sign that would comply with the unchallenged portions of the ordinance").

In this case, on the other hand, plaintiffs have clearly expressed their intention to make whatever structural modifications to their facilities are necessary to comply with the unchallenged provisions of the 2010 Ordinance and to reapply for adult entertainment licenses if the alleged constitutional infirmities in the ordinance are remedied as a result of this litigation.  Thus, they still have a legally cognizable interest in the outcome of this lawsuit.

10

Focusing specifically on plaintiffs' claim that the ordinance's annual regulatory fee provision vests the City with unbridled discretion,[6] defendants contend that plaintiffs may not pursue this claim because they are not "subject to" the provision. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988) ("[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license") (footnote and citation omitted). Again, defendants rely on sign ordinance cases holding that companies denied sign permits on the basis of ordinance provisions upheld as constitutional were not "subject to" other provisions of the ordinance. *See Advantage Adver., LLC v. City of Hoover, Ala.*, 200 F. App'x 831, 835 (11th Cir. 2006); *Granite State Outdoor Adver., Inc. v. Cobb Cnty., Ga.*, 193 F. App'x 900, 905 (11th Cir. 2006). Once again, however, these cases are distinguishable because the sign companies expressed no intention of erecting signs that were permitted under the constitutional provisions of the ordinance. *See Advantage*, 200 F. App'x at 835

---

[6] For purposes of this discussion, the Court assumes that plaintiffs have adequately stated such a claim. This issue is addressed below in connection with the City's motion for reconsideration.

("ADvantage did not allege in its complaint or present evidence that it intended to construct signs that might be permitted under the statute"); *Granite State*, 193 F. App'x at 905 ("Granite State offered no evidence that it is engaging in any form of expression that is permitted under the Sign Ordinance").

Finally, defendants also argue that plaintiffs' claim regarding the annual regulatory fee is not ripe for adjudication because they have not been required to pay the fee and because plaintiffs have taken the position that they cannot operate profitably under the ordinance regardless of the amount of the regulatory fee. This argument is without merit for the same reasons discussed above regarding mootness. Although plaintiffs claim that they cannot operate profitably under the ordinance's current restrictions, if those restrictions are removed as a result of this litigation, plaintiffs intend to reapply for adult entertainment licenses and will be required to pay the regulatory fee. Therefore, this claim is ripe.

II.     Motions for Reconsideration

A.     Standard of Review

Motions for reconsideration are not favored and "shall not be filed as a matter of routine practice." LR 7.2E, NDGa. "A court should grant a motion for reconsideration only if: (1) there has been an intervening change in controlling

12

law; (2) the party discovers new evidence; or (3) reconsideration is needed to correct clear error or prevent manifest injustice." *Diamond Crystal Brands, Inc. v. Wallace*, 563 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008) (citations omitted). "Parties . . . may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000) (citations omitted).

B.     Plaintiffs' Motion for Reconsideration

Plaintiffs move for reconsideration of the Court's May 26 Order insofar as it granted the City's motion to dismiss plaintiffs' First Amendment claims.[7] Plaintiffs first argue that the Court lacked jurisdiction to rule on the City's motion, and that it erred in considering the City's secondary effects evidence. The remainder of plaintiffs' motion is based on new claims and arguments that should have been raised earlier, as well as a rehash of arguments previously rejected by

---

[7] Plaintiffs do not seek reconsideration of the Court's dismissal of all other claims against the City, or its dismissal of all claims against the individual defendants, or its refusal to allow plaintiffs to file a Second Amended Complaint.

13

the Court.  Plaintiffs cite no new precedent or newly discovered evidence, nor do they point to any clear error.  Accordingly, the Court denies their motion.

1.    Jurisdiction

First, plaintiffs contend that the Court lacked jurisdiction to rule on issues involved in the pending appeal, including whether the 2010 Ordinance should be subject to strict scrutiny and whether it is narrowly tailored under the fourth prong of the *O'Brien* test.[8]  This argument is without merit.  As the Court noted in its May 26 Order:  "Ordinarily an interlocutory injunction appeal under § 1292(a)(1) does not defeat the power of the trial court to proceed further with the case."  Order of May 26, 2011, at 6 n.5 (quoting 16 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3921.2 at 53 (2d. ed. 1996)); *see also  Alabama v. U. S. Envtl. Prot. Agency*, 871 F.2d 1548, 1553-54 (11th Cir. 1989) ("The district court had jurisdiction to grant summary judgment and to dismiss the suit despite the pending interlocutory appeal") (citation omitted).  Plaintiffs ignore this authority

---

[8] It is far from clear that these issues are actually involved in the pending appeal. Plaintiffs' motion for a preliminary injunction was based solely on their claim that the 2010 Ordinance does not satisfy the second prong of the *O'Brien* test, and the Court denied the motion based solely on its finding that plaintiffs had failed to establish a likelihood of success on the merits of that claim.  *See* Mem. in Supp. of Pls.' Mot. for TRO and Prelim. Inj. [73-1] at 7-20; Order of Jan. 13, 2011, at 12-17.  Plaintiffs fail to explain how their appeal of this ruling somehow raises other issues on which the Court did not rule.

and rely instead on cases involving appeals from final judgments. These cases, however, are not applicable here. *See Janousek v. Doyle*, 313 F.2d 916, 920-21 (8th Cir. 1963) (drawing distinction between effect of interlocutory appeal and final judgment appeal and upholding power of trial court to dismiss action during pendency of interlocutory appeal).

### 2.    Consideration of Secondary Effects Evidence

Next, plaintiffs contend that the Court improperly considered the City's evidence of adverse secondary effects without converting the motion to dismiss to a motion for summary judgment. Contrary to plaintiffs' argument, however, the evidence considered by the Court was not outside the pleadings. As the Court explained in its May 26 Order, the evidence on which the City relied in enacting the 2010 Ordinance was both referred to in the Amended Complaint and a matter of public record and therefore could be considered by the Court without converting the City's motion to dismiss into a motion for summary judgment. Order of May 26, 2011, at 16-17. Plaintiffs' motion fails to address this point.

Plaintiffs also argue that the Court erred by failing to engage in the burden-shifting analysis set out in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002). This argument ignores the two separate and independent reasons

15

given by the Court in its May 26 Order as to why such an analysis was neither

necessary nor appropriate in this case.  As the Court explained, since plaintiffs'

Amended Complaint fails "to state a plausible claim that the 2010 Ordinance does

not further the City's substantial interest in curbing the adverse secondary effects

of adult entertainment establishments, . . . the *Alameda Books* burden-shifting

scheme does not come into play."  Order of May 26, 2011, at 26 (footnote

omitted).  Moreover, since the secondary effects evidence cited by the City "is

sufficient to conclusively establish" that the 2010 Ordinance furthers a substantial

governmental interest "without resorting to the *Alameda Books* burden-shifting

analysis," using that analysis "would directly undermine both the right of

municipalities to rely upon studies and decisions from other jurisdictions and the

fundamental rule of *stare decisis*." *Id.* at 27-30 (quoting *Sensations, Inc. v. City of

Grand Rapids*, Nos. 1:06-CV-300, 4:06-CV-60, 2006 WL 5779504, at *7 (W.D.

Mich. Oct. 23, 2006), *aff'd*, 526 F.3d 291 (6th Cir. 2008)).  Plaintiffs' motion does

not even address these rulings, much less show that they were in error.

>        3.      New Claims

Plaintiffs challenge several ordinance provisions for the first time in their

motion for reconsideration.  First, plaintiffs claim that the provision defining "adult

entertainment establishment" to include businesses in which even clothed persons "perform live in a manner so as to feature, depict, display, or emphasize their genitals, pubic region, anus, or female breasts" (Section 9-12-2) is unconstitutionally overbroad.   Second, plaintiffs claim that the provision prohibiting anyone in an adult entertainment establishment from engaging in "specified sexual activities" (Section 9-12-7(d)), which is defined to include "[a]ctual or simulated intercourse" and "[f]ondling or other erotic touching of human genitals, pubic region, buttocks or female breast" (Section 9-12-2), should be struck down under strict scrutiny; and, even if analyzed under intermediate scrutiny, is not narrowly tailored under *O'Brien*'s fourth prong.  Finally, plaintiffs claim that the provision imposing criminal penalties for violations of the ordinance (Section 9-12-8) should be struck down under strict scrutiny because it contains no *mens rea* requirement.

The Court need not address the merits of any of these claims because plaintiffs failed to raise them previously. The Amended Complaint contains a long list of ordinance provisions to which plaintiffs object, but nowhere does it refer to any of these provisions. *See* Am. Compl. ¶¶ 31-32 (citing provisions prohibiting alcohol and nudity, requiring entertainers to perform at least four feet from patrons

17

and on platforms at least eighteen inches high and to wear permits except when

performing, and establishing physical layout requirements and licensing and permit

procedures).  The Amended Complaint also makes clear that it is only these listed

provisions that plaintiffs are challenging.  *Id.* ¶ 23 (referring to "license

requirements, permit process, prohibitions against alcohol and nude dancing, and

various regulations regarding layout and location of the establishments" and stating

that "[t]he aforementioned provisions are . . . the provisions that are challenged in

the amended Complaint").  Not surprisingly, therefore, Count II of the Amended

Complaint, which sets out plaintiffs' First Amendment claims, makes no reference

whatsoever to these other provisions.[9]  *Id.* ¶¶ 43-45.

Plaintiffs not only omitted any reference to these newly challenged

provisions in their Amended Complaint.  They also failed to mention them

anywhere in their opposition to the City's motion to dismiss.  Plaintiffs' brief did

not refer to, or make any claim or argument based on, the ordinance's definition

of "adult entertainment establishment" or its prohibition on persons engaging in

---

[9] The absence of any claim based on these provisions is further evidenced by their omission from the list of provisions the City agreed not to enforce during the pendency of plaintiffs' motion for a preliminary injunction. *See* Joint Stipulation Regarding Enforcement and Injunctive Relief Claims [102] at 2-3.

"specified sexual activities."  Although plaintiffs' brief did refer to the provision imposing criminal penalties, it made no reference to, or any claim or argument based on, that provision's lack of a *mens rea* requirement.[10]  *See* Pls.' Resp. to Def. Forest Park's Mot. to Dismiss [94] at 7, 13 n.4, 22-23.  Their brief also failed to cite any of the cases on which they rely in their motion for reconsideration to support the new claims based on these ordinance provisions.

Since plaintiffs failed to include allegations in their Amended Complaint sufficient to notify either defendants or the Court that they were challenging these provisions; and since, in opposing the City's motion to dismiss, plaintiffs failed to assert any claim or make any argument based on these provisions, they may not raise these claims and arguments now.  *See Flanigan's Enters., Inc. of Ga. v. Fulton Cnty., Ga.*, 242 F.3d 976, 988 (11th Cir. 2001) (*Flanigan's I*) (affirming district court's decision not to address merits of claim first raised in response to motion for summary judgment because "Plaintiffs failed to plead facts sufficient to notify Defendants or the court that they challenged the licensing scheme as a

_____

[10] The Court notes that to the extent the ordinance can be read to punish unintentional violations, the Georgia courts are likely to adopt a narrowing construction that requires proof of intent. *See State v. Miller*, 260 Ga. 669, 674 (1990) (construing Anti-Mask Act to include *mens rea* requirement to avoid constitutional overbreadth problem).

19

whole"); *Brogdon*, 103 F. Supp. 2d at 1338 ("Parties may not employ a motion for reconsideration as a vehicle to present new arguments . . . that should have been raised earlier"); *McCoy v. Macon Water Auth.*, 966 F. Supp. 1209, 1223 (M.D. Ga. 1997) ("[A]ny arguments [raised in motion for reconsideration] which the party inadvertently failed to raise earlier are deemed waived") (citation omitted).

Plaintiffs argue that the Court should consider their newly raised overbreadth claim[11] because (1) the claim is meritorious, (2) defendants would not be prejudiced if the Court considered the claim, and (3) they have shown good cause for not raising the claim previously. Plaintiffs' argument is without merit.

First, plaintiffs mistakenly rely on the standard for granting relief from a default judgment under Fed. R. Civ. P. 60(b)(1). Because plaintiffs' motion was filed within the time allowed under Fed. R. Civ. P. 59(e) for a motion to alter or amend judgment and seeks reconsideration of the Court's ruling on the merits, it is properly construed as a Rule 59(e) motion. *Mahone v. Ray*, 326 F.3d 1176, 1177 n.1 (11th Cir. 2003); *Finch v. City of Vernon*, 845 F.2d 256, 258-59 (11th Cir. 1988). The only grounds for granting a Rule 59(e) motion are the submission of

---

[11] Plaintiffs make no argument as to why the Court should consider their other newly raised claims.

20

newly-discovered evidence or the demonstration of manifest error. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). A Rule 59(e) motion may not be used to "raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (citations omitted).

Furthermore, contrary to their argument, plaintiffs have not demonstrated "good cause" for their failure to assert the overbreadth claim previously. Plaintiffs contend that they overlooked the new definition of "adult entertainment establishment" in the 2010 Ordinance because they "were in the process of responding to a wave of motions and litigation." Pls.' Reply Br. in Supp. of Pls.' Mot. for Recons. [147] at 10. Plaintiffs refer to the time period during November and December 2010 when the parties were litigating plaintiffs' motion for a preliminary injunction and were required to produce and/or review voluminous amounts of secondary effects evidence. *Id.* at 10-12.

This argument, however, ignores the fact that the 2010 Ordinance was enacted on March 9, 2010, and plaintiffs did not submit their Amended Complaint until September 21, 2010, more than six months later. During this time period, litigation was actually stayed for 60 days while the parties discussed settlement and

then the parties were engaged in discovery.  Thus, plaintiffs had ample time and opportunity to discover the new provision that they now claim "is the fundamental constitutional infirmity of this Ordinance."  Br. in Supp. of Pls.' Mot. for Recons. [138-1] at 4.  All that was required was simply to study the new ordinance and compare its provisions to the 2009 Ordinance.[12]  Plaintiffs have not established "good cause" for their failure to do so or for their resulting failure to bring this claim to defendants' and the Court's attention in a timely fashion.

### 4.     Previously Raised Claims

The remainder of plaintiffs' motion for reconsideration concerns provisions they previously challenged either in the Amended Complaint[13] or in their

---

[12] That plaintiffs failed or skimmed in performing this basic in-depth review is evidenced by their erroneous allegation in the Amended Complaint that, apart from the section setting out the City's findings and purpose, "the other provisions of the two Ordinances are the same." Am. Compl. ¶ 23. Even plaintiffs' proposed Second Amended Complaint, which purportedly "clarified the portions of the 2010 Ordinance which Plaintiffs claimed were objectionable," continued to allege that the provisions of the 2009 Ordinance and the 2010 Ordinance were "substantially the same." Pls.' Request for Leave of Court to File [Second] Am. Compl. [106] at 2; Second Am. Compl. ¶¶ 29, 39.

[13] The Amended Complaint challenged the following provisions of the 2010 Ordinance: (1) prohibitions on alcohol and nudity, Section 9-12-7(e) & (f); (2) prohibition on entertainers performing closer than four feet to a patron, Section 9-12-7(c); (3) requirement that employee permits be worn so as to be readily visible at all times except when an entertainer is actually performing, Section 9-12-6(b)(5); (4) requirement that all dancing by entertainers occur on a platform raised at least eighteen inches above the floor, Section 9-12-6(g); (5) requirement that premises be "fully lighted" at all times patrons are present, Section 9-12-6(h); (6) requirement (continued...)

opposition to the City's motion to dismiss.[14]  In its May 26 Order, the Court addressed and upheld all but one of these provisions.  Order of May 26, 2011, at 31-44.  Plaintiffs' motion for reconsideration cites no new precedent or new evidence relating to the constitutionality of any of these provisions and points to no clear error in the Court's rulings.

C.     City of Forest Park's Motion for Reconsideration

The City of Forest Park moves for reconsideration of the Court's May 26 Order insofar as it held that plaintiffs had stated a viable First Amendment claim based on the annual regulatory fee imposed by the 2010 Ordinance.  The Court

---

[13](...continued)
that all entertainment or other interaction between employees and patrons take place in open areas that are open to view from all other areas of the premises, Section 9-12-14(a); (7) requirement that businesses procure an annual license to operate as an adult entertainment establishment, Section 9-12-3(a); (8) requirement that employees and independent contractors obtain a permit before working on a licensed premises, Section 9-12-6(b)(2); and (9) requirement that employees and independent contractors pay an unspecified annual permit fee, Section 9-12-6(b)(4).  Am. Compl. ¶¶ 31-32, 43(c).

[14] In their opposition to the City's motion to dismiss, plaintiffs challenged the following additional provisions of the 2010 Ordinance: (1) requirement that employee records be open for inspection by police during normal operating hours, Section 9-12-6(j); (2) authorization for police to inspect adult entertainment establishments any time they are occupied by one or more persons in order to determine compliance with and enforce applicable law, Section 9-12-10(c); (3) authorization to suspend or revoke a license for violation of any of the regulations or prohibitions contained in the ordinance, Section 9-12-11(a)(2); (4) requirement that license applications be approved or denied within 30 days without providing for automatic approval if City fails to act within 30-day time limit, Section 9-12-5(d); (5) imposition of an unspecified license application fee, Section 9-12-5(a); and (6) imposition of an unspecified annual regulatory fee, Section 9-12-3(b).  Pls.' Resp. to Def. Forest Park's Mot. to Dismiss [94] at 12-18.

23

upheld this claim because "[t]he ordinance lacks any standards to guide the City's governing body in setting the amount of the annual regulatory fee and thus leaves open the possibility that this fee may exceed an amount 'reasonably related to recouping the costs of administering the licensing program.'"  Order of May 26, 2011, at 44 (quoting *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1315 (11th Cir. 2003)).

The City contends that the Court clearly erred in this ruling because the Amended Complaint fails to assert any claim based on the annual regulatory fee. Even if such a claim had been adequately pled, the City argues, it fails as a matter of law because (1) the fee is not imposed until after a license has been granted and therefore does not constitute a prior restraint; and (2) the amount of the fee is established by ordinance and therefore is not subject to any City official's unbridled discretion.[15]  Upon reconsideration, the Court agrees that plaintiffs failed to adequately plead a claim based on this provision of the ordinance.  Therefore, the Court need not address the City's other arguments.

_____

[15] The City also contends that plaintiffs lack standing to bring this claim and that it is not ripe for adjudication.  The Court has already addressed these arguments above in ruling on defendants' supplemental motion to dismiss.

Plaintiffs first asserted a claim based on the annual regulatory fee in their response to the City's motion to dismiss.   *See* Pls.' Resp. to Def. Forest Park's Mot. to Dismiss [94] at 16-18.  However, "[t]hat response, filed more than [twenty] months after commencement of this suit, was unaccompanied by either a motion to amend the pleadings or any reason justifying an amendment."[16]  *Flanigan's I*, 242 F.3d at 988.   Therefore, the Court "must decide whether the Plaintiffs' pleadings were sufficient to give Defendants and the court notice that the [regulatory fee provision] w[as] subject to challenge as a prior restraint."  *Id.*

The Amended Complaint clearly asserts a prior restraint claim based on the ordinance provision imposing an employee permit fee.  Am. Compl. ¶ 43(c). However, it makes no reference whatsoever to the ordinance provision establishing the annual regulatory fee.   In their response to the City's motion for reconsideration, plaintiffs do not dispute that the Amended Complaint fails to assert any claim based on this provision.   *See* Pls.' Consol. Resp. to Defs.' Supplemental Mot. to Dismiss and Defs.' Mot. for Recons. [148] at 15-18.

---

[16] Plaintiffs did seek leave to file a Second Amended Complaint, but that complaint, like both the original Complaint and the Amended Complaint, made no reference to the regulatory fee provision.

25

The Court concludes that plaintiffs' pleadings failed to give the City and the Court notice that plaintiffs were challenging the regulatory fee provision, and that the Court erred in considering this claim, which was asserted for the first time in plaintiffs' response to the City's motion to dismiss. Accordingly, the Court grants the City's motion for reconsideration and vacates that portion of its May 26 Order holding that plaintiffs had stated a viable First Amendment claim based on the regulatory fee provision.

Summary

For the foregoing reasons, the Court DENIES defendants' supplemental motion to dismiss [135], DENIES plaintiffs' motion for reconsideration [138], GRANTS the City of Forest Park's motion for reconsideration [141], and VACATES that portion of its Order of May 26, 2011, holding that plaintiffs had stated a viable First Amendment claim based on the provision of the 2010 Ordinance establishing an annual regulatory fee. Consequently, this action is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED, this 30th day of August, 2011.

Amy Totenberg
United States District Judge

26